[Crim. No. 5501. Second Dist., Div. Two. Mar. 6, 1956.]

THE PEOPLE, Respondent, v. GEORGE WELDON ROSS, Appellant.

Marshall Denton, Jr., for Appellant.

Edmund G. Brown, Attorney General, and Rudolph Pacht, Deputy Attorney General, for Respondent.

FOX, J.—Defendant was convicted of (1) hit and run driving (Pen. Code, § 480), and (2) manslaughter, a misdemeanor (Pen. Code, § 192, subd. 3(b)). He appeals from the judgment.[1]

As grounds for a reversal, defendant contends (1) the evidence is insufficient to prove[2] that he was the driver of

---

[1]Defendant was granted probation but such an order is deemed a final judgment for purposes of appeal. (Pen. Code, § 1237.)

[2]When an attack is made upon the sufficiency of the evidence to sustain a finding we must view the evidence in the light most favorable to the successful party in the trial court. (*Leming* v. *Oilfields Trucking Co.*, 44 Cal.2d 343, 346 [282 P.2d 23].)

the car that hit and killed the victim, and (2) that the evidence fails to establish the elements necessary to constitute the offense of manslaughter, a misdemeanor.

On December 31, 1954, between 8:15 and 9:30 p. m. Bud Robinson, while walking across Willowbrook Avenue, in Los Angeles, from east to west at the intersection of 119th Street, was struck by an automobile traveling south on the easterly side of Willowbrook (which is divided into two roadways by streetcar tracks), as a result of which he received injuries that caused his death. As Robinson crossed Willowbrook on the south, Ernest D. Jackson passed him in his car. Jackson had made a boulevard stop at Willowbrook at which time Robinson was about halfway across the intersection. The car that hit Robinson "just missed the back" of Jackson's automobile immediately before striking Robinson. In order to avoid a collision with this car, Jackson had to quickly accelerate his vehicle so as to make it "jump."

The car that hit Robinson was traveling 40 to 45 miles per hour at the time. It failed to stop after hitting him but instead it proceeded south on Willowbrook and disappeared. Jackson backed his car up and gave chase but lost sight of the vehicle.

After the impact, Robinson was lying next to the tracks about 12 feet from the point of impact. At the time he was hit Robinson was carrying a bag in which were some beer bottles. They were apparently broken in the accident.

At approximately 1:30 on the morning of January 1, 1955, Highway Patrol Officer Foster found defendant's car parked on 114th Street down the street from the home of Gertie Mae Wilson, where defendant claimed to have spent the previous evening. The right front fender and the headlight were damaged and the windshield shattered. When defendant appeared at the Sheriff's Firestone Substation about 3:00 o'clock that morning he "had a small wound right in the middle of his forehead like a puncture wound; or a very small cut; very fresh." Particles of glass were found in defendant's hair and clothing identical with a piece removed from the inside surface of the windshield. A piece of amber-colored glass was removed from the damaged right-front headlight which had the same physical and chemical properties as the broken beer bottles the victim was carrying. Green paint samples taken from the car matched those found in the street at the scene of the accident and also matched smears on the victim's trousers. A fender ornament

found on the street at the scene was the counterpart of another on the vehicle. A portion of a headlight guard found at the scene of the accident matched the one on the left-front side of the car, the one on the right being missing.

Defendant relies upon an alibi to the effect that he had been at a party at Mrs. Wilson's house on New Year's eve when the accident occurred. He had gone there with his wife and another lady in his car. During the evening he looked out and noticed his car was not in front of the house where he had parked it. He made no inquiry, however, about it because he assumed his roomer, Mr. Rashew, had borrowed it as he had done on previous occasions without asking permission since he knew that defendant was in the habit of leaving the keys in a compartment in the car from which a radio had been removed. Rashew did not drive defendant's automobile that night. Defendant and his wife and Mrs. Spruell were away from the Wilson party in defendant's car for about half an hour during the evening, returning between 8 and 9 o'clock. Because of the asserted disappearance of defendant's car, the Spruells took the Rosses home after the party was over.

In passing on the sufficiency of the evidence to sustain a conviction it should be borne in mind that before a reversal may be had, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Frankfort,* 114 Cal.App.2d 680, 689 [251 P.2d 401].)

We must assume in support of the judgment the existence of every fact which the trial court could have reasonably deduced from the evidence, and then determine whether the facts "justify the inference of guilt." (*People* v. *Deysher,* 2 Cal.2d 141, 149 [40 P.2d 259].) It was, of course, for the trial court to pass upon the credibility of the witnesses, resolve the conflicts and inconsistencies in the testimony, and determine the weight to which it is entitled. (*Dillard* v. *McKnight,* 34 Cal.2d 209, 223 [209 P.2d 387, 11 A.L.R.2d 835].)

Applying these principles, it is clear that the trial court was amply warranted in drawing the inference not only that it was defendant's car that hit the victim but also that defendant was the driver of it. In fact, defendant makes no argument that his car was not involved in this accident. Rather, he seeks to escape on the theory that someone else was operating his car at the time. But the fresh wound on

his forehead, the shattered windshield, and the presence of fragments of glass from the inside of the windshield in his hair and clothing, serve to identify defendant as the driver. Not without significance was the conduct of the defendant upon discovery that his car was gone. As noted by the trial judge, it was "not the conduct of a man that believes his car was stolen." The judge made the further pertinent comment that "it isn't likely that if the car were stolen the thief would be kind enough to bring it back to the scene of the theft." It is thus plain that the judge did not believe the defendant's story that his car had been stolen and the thief had been operating it at the time of the accident. The judge stated he did not believe certain of the other witnesses. After analyzing the evidence, the judge stated "there isn't any doubt in the court's mind" about defendant's guilt. It cannot be said as a matter of law that the evidence is insufficient to sustain defendant's conviction. (*People* v. *Jones*, 36 Cal.2d 373, 375 [224 P.2d 353].)

Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds, one of which grows out of the driving of a vehicle. (Pen. Code, § 192, subd. 3(b).) Such an unlawful killing in the driving of a vehicle is further divided into two categories, the distinguishing feature being whether gross negligence is present or absent. (See Pen. Code, § 192, subd. 3(a) and (b).) Defendant was found guilty of violating subdivision 3(b) of section 192, Penal Code. This type of manslaughter, committed in the driving of a vehicle, may result from the commission of an unlawful act not amounting to a felony without gross negligence, or from the commission of a lawful act which might produce death in an unlawful manner but without gross negligence, provided the homicide was the proximate result of the operation of a vehicle in such manner. (Pen. Code, § 192, subd. 3(b).)

The evidence shows that the offending automobile went through the intersection at night at a speed of 40 to 45 miles per hour, apparently in utter disregard of the presence of another car and of a pedestrian. It was necessary for the driver of the other vehicle to quickly accelerate his car—to make it "jump"—in order to get out of the way of the onrushing vehicle. This would indicate defendant either was paying no attention to the traffic or was proceeding with reckless abandon and utter disregard of the consequences of his speed. This evidence justifies an inference of negligence on the part of the operator of the vehicle. ■ Thus defendant

was doing a lawful act which might, and actually did, produce death, in an unlawful manner, "for it is implicit in subsection 3(b) that the commission in a negligent manner, but without gross negligence, of a lawful act which might produce death would be the commission of the act in an unlawful manner, since the act, if committed with usual and ordinary caution and without any unlawful intent, would be excusable under section 195" of the Penal Code. (*People* v. *Wilson*, 78 Cal.App.2d 108, 114 [177 P.2d 567].)

The evidence justifies the inference that the victim was crossing the intersection in the crosswalk. This is fortified by the presumption that "a person takes ordinary care of his own concerns." (Code Civ. Proc., § 1963, subd. (4).) Section 560, subdivision (a) of the Vehicle Code requires that "The driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection. . . ." This defendant failed to do. He thereby committed an unlawful act (not amounting to a felony) which proximately resulted in Robinson's being hit and killed.

Thus defendant's conviction of violating Penal Code section 192, subdivision 3(b), may be sustained either upon the theory that he committed an unlawful act, not amounting to a felony, without gross negligence, which proximately caused the death of Robinson, or a lawful act which might (and did) proximately produce death, in an unlawful manner but without gross negligence. Hence the elements necessary to constitute the crime of manslaughter, a misdemeanor (Pen. Code, § 192, subd. 3(b)), were established.

The judgment is affirmed.

Moore, P. J., and Ashburn, J., concurred.