[Crim. No. 6146.   Second Dist., Div. Two.   May 20, 1958.]

THE PEOPLE, Respondent, v. THEODORE PETE WHITSETT, Appellant.

H. Clay Jacke for Appellant.

Edmund G. Brown, Attorney General, and Joe J. Yasaki, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant was charged with violating Vehicle Code, section 480, in that on May 18, 1957, he drove an automobile which was involved in an accident resulting in injury to Mack J. Rhodes, all of which defendant well knew; and that the defendant wilfully and feloniously failed, neglected and refused to give to said Mack J. Rhodes his name, address, vehicle registration number, and the name of the owner of the vehicle, to exhibit his operator's license, and to render all reasonable assistance to said Mack J. Rhodes, who was then in need of assistance by reason of said accident.

A jury having been duly waived, the court found the defendant guilty as charged, and granted him probation. Defendant has appealed from the order* of October 31, 1957, by which probation was granted.

Since defendant's principal argument for reversal is that the evidence is insufficient to support the judgment of conviction, it is necessary to state the facts in some detail.

At approximately 9:30 on the evening of May 18, 1957, Rhodes, who lived at 1726 West 37th Place, in the city of Los Angeles, started to walk across Western Avenue at its intersection with 37th Place. Rhodes was in the crosswalk going from east to west. As he left the east curb of Western Avenue he looked to his left, then proceeded into the street. When he was about two feet from the center line he looked to his right. At that time he was struck on the left thigh—"right close up to the hip"—by a north-bound automobile. Prior to the accident Rhodes did not hear any car or see any automobile lights. When struck he momentarily "blacked out." As a result of the accident Rhodes was injured and bleeding. Immediately after the impact defendant was standing over Rhodes. Defendant said to him, "Get up from there you . . . you ain't hit, you ain't hurt." About this time another man, who was crossing Western Avenue, approached Rhodes. He reached down to take Rhodes by the right arm to help him up. At that point defendant went to Rhodes' left side and assisted in getting him up and onto the sidewalk, where he rested on a chain post in front of a store. As Rhodes was being helped to the sidewalk he observed the license number—MYT 338— of a parked 1957 Chevrolet, which he later wrote down.

Rhodes asked defendant to show him his driver's license. Defendant refused, stating, "I will not show it. I won't give you nothing." He also said to Rhodes, "Call the . . . damn

---

*Such an order is deemed a final judgment for purposes of appeal. (Pen. Code, § 1237.)

cops. Go on, call the . . . damn cops. I won't give them nothing." He further stated that Rhodes "had no business out in the street."

Rhodes searched his pockets for a dime to call the police but discovered that a fifty cent piece was the smallest coin he had. He thereupon requested the pedestrian who had helped him to the sidewalk to call the police. Defendant, however interrupted and said to Rhodes, "No, you call them." Defendant then drove off in the 1957 Chevrolet, the license number of which Rhodes had written down. Rhodes estimated that about three or four minutes elapsed from the time of the impact to the time defendant drove off.

Rhodes arrived home about five minutes later, called the police, reported the accident, and gave them the license number. He also called his physician, who examined him the next morning and treated his injuries.

Officer Linebaugh, of the Los Angeles Police Department, investigated the case. He found that the 1957 Chevrolet (license number MYT 338) was registered to Evelyn Hoover Whitsett. Officer Linebaugh made an inspection of the car. There was a dent "that appeared to be fresh" on the left front of the hood near where it curves from horizontal to vertical, immediately above the Chevrolet emblem; he also testified that "there was a disturbance in the dust on the crome grill that ran horizontally across the hood, immediately below the dent, that appeared as though something had brushed against it." The officer, however, could not determine whether this disturbance of the dust on the grill had been made by a person's clothes.

At approximately 3:15 on the afternoon following the accident Officer Linebaugh had a conversation with defendant at the police station. The officer asked defendant who was the last person to drive the car on the day before. Defendant stated that he was. He further stated that he parked the car in front of his home between 7 and 8 p.m. on the previous evening; that he then went into the house, and that "his wife had called him at about 9:30 and he had been home." He also told the officer that "he did not remember where he was nor what he had been doing between the time he parked the car and the time his wife called him"; that "he did not remember having any accident," that he "did not remember loaning the car," and "did not remember whether or not he locked the car when he parked it." The officer further testified that he

asked defendant how the dent came to be in the hood, and that he replied that "he could not explain it."

Defendant bases his contention that the evidence is insufficient to sustain the conviction on the theory that there was no proof that he was the driver of the automobile that struck and injured Rhodes. ▓ In deciding a like question in *People* v. *Ross*, 139 Cal.App.2d 706 [294 P.2d 174], a hit and run case, this court stated (p. 709) : "In passing on the sufficiency of the evidence to sustain a conviction it should be borne in mind that before a reversal may be had, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. [Citations.] ▓ We must assume in support of the judgment the existence of every fact which the trial court could have reasonably deduced from the evidence, and then determine whether the facts 'justify the inference of guilt.' " The identity of the driver may be proved by circumstantial evidence. (*People* v. *Abila*, 137 Cal. App. 26, 27-28 [29 P.2d 796] ; *People* v. *Leutholtz*, 102 Cal. App. 493, 495-496 [283 P. 292] ; *People* v. *Houston*, 24 Cal. App.2d 167, 169 [74 P.2d 515].)

▓ Applying these principles, it is clear that the evidence and the inferences reasonably to be drawn therefrom amply support the conviction. Defendant was positively identified by Rhodes as having been present at the scene of the accident when the latter regained consciousness shortly after the impact. Since defendant entered and drove away in a 1957 Chevrolet, license number MYT 338, it may be inferred that he drove the same automobile to that location.

Implicit in Rhodes' request to see defendant's operator's license was an accusation that the defendant was the driver of the automobile which struck him; that is, that Rhodes asked to see defendant's license because he believed that the defendant was the driver of the car that had hit and injured him. Defendant's refusal to exhibit it, and his comment about calling "the cops," and his statement that he would give them nothing, do not constitute a denial of the implied accusation. They are indicative rather of a consciousness of guilt and tend to support an inference that defendant was the driver of the automobile that struck Rhodes.

Defendant's insistence that Rhodes and not the pedestrian who helped assist him to the sidewalk should call the police suggests that defendant was more deeply involved in the accident than as a mere pedestrian or witness. The same is true

of defendant's remarks to Rhodes at the time the latter was lying in the street and when they reached the sidewalk.

In addition, defendant admitted that he was the last person to drive the Chevrolet with the license number MYT 338 on the day of the accident. The automobile was registered in the name of a woman who had the same surname as the surname of the defendant. Defendant did not deny that he was involved in an accident—he merely stated that he did not remember having an accident. In this regard it is to be noted that defendant's statement to the investigating officer that he was at home at the time of the accident was controverted by Rhodes, who testified that he saw and talked to defendant at the scene of the accident. The day following the accident the investigating officer found a dent that appeared to be freshly made in the front portion of the hood of the car and a disturbance of the dust on that portion of the chrome grill immediately below the dent. Defendant, however, was unable to explain the dent. In this connection it should be remembered that the defendant did not take the witness stand.

While "the failure to testify will not supply a lacuna in the prosecution's proof" (*People* v. *Ashley*, 42 Cal.2d 246, 268 [267 P.2d 271]), a defendant's failure to take the stand "to deny or explain evidence presented against him, when it is in his power to do so, may be considered by the jury as tending to indicate the truth of such evidence, and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable." (*People* v. *Adamson*, 27 Cal.2d 478, 489 [165 P.2d 3].) It is thus apparent that the trial judge was abundantly justified in impliedly finding that defendant was the driver of the car that struck Rhodes.

Defendant's second contention seems to be that the court erred in admitting into evidence the conversation he had with Officer Linebaugh. His theory is that the corpus delicti had not been sufficiently shown because the identity of the driver had not been established. It is settled that proof of the corpus delicti does not require identification of the defendant. (*People* v. *Ward*, 134 Cal. 301 [66 P. 372]; *People* v. *Jones*, 123 Cal. 65, 68 [55 P. 698].) In the Ward case the court, at page 306, stated: "Proof of the *corpus delicti* does not necessarily involve or require proof that the crime was committed by the defendant, or person charged with having committed it."

The testimony of Rhodes establishes that he was

struck and injured by an automobile while he was crossing Western Avenue in the pedestrian crosswalk. It is, of course, obvious that someone was driving the car. It is also clear from Rhodes' testimony that no one identified himself to Rhodes as the driver of the vehicle involved, or exhibited his operator's license, or furnished the information required by the Vehicle Code, or rendered reasonable assistance for the securing of medical treatment. Thus, the corpus delicti of the offense charged was adequately established. The statements of the defendant to the officer were clearly admissible. (*People* v. *Jones, supra.*)

The order is affirmed.

Ashburn, J., and Herndon, J., concurred.