[Crim. No. 6113.    First Dist., Div. Four.    July 14, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. PETER LIMON, Defendant and Appellant.

Louis Romero for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Walter R. Jones, Deputy Attorney General, for Plaintiff and Respondent.

DEVINE, P. J.—Appellant was convicted of violation of section 20001 of the Vehicle Code (hit and run in personal injury accident).

The vehicle of which appellant, Peter Limon, was the driver was seen by the victim of the accident a moment before it struck him. The victim, Samuel Murdock, had been walking along a sidewalk. Murdock saw no one in the car but the driver. At that time the car was only five feet away. Murdock was knocked into a liquor store window.

Philip Reed, who was driving another vehicle, saw the Limon automobile with only one occupant about twenty feet distant from Reed and approaching on the wrong side of the street. Reed swerved and avoided collision. He saw the Limon vehicle cross the sidewalk and crash into the liquor store. Reed stopped his car about thirty to thirty-five feet from the liquor store and ran back to the scene of the crash. The driver, appellant, was leaning over the steering wheel; the engine was still running in gear, and the wheels were turning. Reed

shook appellant and told him to "Turn off the car and get out," which appellant did. There were no other persons in the vehicle. Reed did not see anyone move away from it.

Limon began to walk away. Reed instructed him, "Don't leave, we will call the police and the ambulance." Reed proceeded to administer aid to Murdock, who was bleeding profusely. The proprietor of the store telephoned for the police and for an ambulance.

Another witness, Don Shepherd, heard the sound of the collision, saw appellant standing about ten feet from the store, and saw him walk away until he was out of sight.

When the police arrived, one of the officers set out to find the driver, going in the direction toward which Limon had departed. He found Limon about thirty-five minutes later. Appellant was walking back in the direction of the accident. Appellant was advised of his rights. He denied being the driver of the vehicle, which was registered to an automobile training school. This denial was repeated by appellant at the trial. No doubt it weighed heavily against him in the jury's assessment of his asserted reason for leaving the scene. Appellant told the officer he had left the scene to telephone his wife. He said he had made this phone call only. He either failed or neglected to respond to tests for sobriety. It was undisputed that he had been drinking rather freely.

Appellant's testimony is that he had been looking for a woman in a bar, that he had succeeded in acquiring the companionship of a girl who drove the automobile into the accident and who then left. He testified that he could not get out of the vehicle on the right-hand side because the door was jammed against a utility pole, and that he slid over to the driver's seat in order to turn off the engine. As to his leaving the scene, he testified that he saw Reed giving ample attention to Murdock and that he went back to the bar in order to telephone to the police. He testified that he was never able to find the girl again. An employee of the bar testified that appellant had left the bar with a girl and returned talking about a collision, and had made a telephone call.

Appellant does not challenge the sufficiency of the evidence. His contentions are given under three headings.

### 1. Refusal of Requested Instruction

Appellant's principal attack on the conviction is the refusal of the court to give this requested instruction: "You

are further instructed that a defendant is not required to render assistance to other individuals where such individuals are being adequately cared [for] by others.''

Preliminarily, we observe that the instruction may have been irrelevant to the theory upon which the jury convicted appellant. Omission to perform any one of the acts required by section 20001 of the Vehicle Code constitutes the offense. (*People* v. *Jordan,* 214 Cal.App.2d 400, 403 [29 Cal.Rptr. 619] ; *People* v. *Cron,* 207 Cal.App.2d 452, 455 [24 Cal.Rptr. 587].) It is possible that the jury found that appellant violated the statute in leaving the scene without having given his name to the victim. The victim was conscious at all times. Although appellant did, of course, give his name when he was encountered by the police, his departure without having provided it to the victim could be regarded as having completed the offense. (See *People* v. *Bellah,* 237 Cal.App.2d 122 [46 Cal.Rptr. 598].) Appellant had been instructed by Reed not to go away and although Reed did not have the authority of a police officer, he was so far in command of the situation that appellant, in his attempt to excuse the fact that he, appellant, did not render direct aid to the victim, relies on the assistance which was being given by Reed.

But since it is at least as likely, and probably more likely that the jury convicted appellant because of his failure to render assistance, the subject of the rejected instruction is relevant. We doubt that it was error at all to refuse the instruction, and we conclude that if there was any error, it was not prejudicial. Appellant relies on *People* v. *Mayo,* 194 Cal.App.2d 527 [15 Cal.Rptr. 366]. It is true that in the *Mayo* case it was held error to refuse the instruction. But this ruling followed a conclusion by the court, announced earlier in its opinion, that the evidence was insufficient to sustain the verdict. Moreover, the chief fault found with the instructions in the *Mayo* case was that they did not make it plain to the jury that the defendant must have known that someone was injured. (It is to be noted that by a later decision, *People* v. *Holford,* 63 Cal.2d 74, 79-80 [45 Cal.Rptr. 167, 403 P.2d 423], it is not required that defendant have actual knowledge of the injury if he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person.) The instruction on assistance to the injured person was entirely subordinate in the *Mayo* case to the instruction on knowledge. Moreover, it was doubted by the court in *Mayo* that the instruction was skillfully drawn. We observe further

that, at least as applied to the facts in the case before us, it would have been inadequate in this respect: it fails to mention what we regard to be a continuing and overriding duty of the driver to see to it that the victim is cared for until arrangements for his medical or surgical treatment are made. The instruction, as offered, might be construed by the jury to exculpate the driver if adequate first aid were administered by someone else, and nothing more were done. This, we hold, is not the intent of the law.

Of course, the ''reasonable assistance'' referred to in the statute might be the summoning of aid. In some cases, it would be much better for the driver to call for assistance than to attempt immediate ministrations to the injured person. In the case before us, we can hardly believe that the jury would have convicted Limon for not intruding himself on the assistance that was being given by Reed. The police officer himself saw no reason for his own giving of aid to the victim, because of Reed's actions. All of this, no doubt, was argued to the jury by counsel for appellant. He could argue it adequately without the proffered instruction.

But there was ample reason for the jury to conclude that appellant was not engaged in the process of summoning help. In the first place, his credibility was impaired by his insistence that he had not been driving the vehicle, in view of the testimony of the witnesses, given above, especially that of Reed, who saw appellant behind the wheel about 12 seconds after the collision. This could not but have had a harmful effect on the rest of appellant's testimony. (*People* v. *Osslo,* 50 Cal.2d 75, 93 [323 P.2d 397].) Appellant told the police, according to the officer's testimony, that he had telephoned his wife only. Appellant's testimony is that he told the police officer that he had made a phone call, but that the officer did not ask whom he had called.

In view of all of the facts, we find that it was not error, and surely not prejudicial error, to refuse the proffered instruction.

## 2. *Asserted Self-Incrimination*

Appellant appears to contend that the Vehicle Code section is unconstitutional in requiring him to give his name as driver, because if he was driving under the influence of liquor he would thereby incriminate himself. The validity of the statute was established long ago. (*People* v. *Diller,* 24 Cal.App. 799 [142 P. 797].) Besides, appellant did not at any time admit that he was the driver. That fact was established by independent evidence.

### 3. *Instructions on "Driver"*

Appellant's final contention is that there is a variation between the instructions on who may be considered the driver of a vehicle and the allegations of the information. The information charges that Limon "did drive a vehicle," but the instructions include as driver "any person who is present in the vehicle at the time of the accident and who has full authority to direct and control its operation, although some other person is doing the actual driving." There is no conflict in this. (*People* v. *Odom*, 19 Cal.App.2d 641, 647 [66 P.2d 206].)

The judgment is affirmed. The appeal from order denying motion for new trial is dismissed.

Rattigan, J., and Christian, J., concurred.